JANOS et al., Appellants,

v.

MURDUCK et al., Appellees.

[Cite as *Janos v. Murduck* (1996), 109 Ohio App.3d 583.]

Court of Appeals of Ohio,
Ninth District, Medina County.

No. 2437–M.

Decided Feb. 28, 1996.

584

*Jerome T. Linnen, Jr.,* for appellants.

*Kenneth S. Stumphauzer* and *Daniel B. Mason,* for appellees.

REECE, Judge.

Appellants, Elliot and Darlene Janos, appeal the Medina County Court of Common Pleas' grant of summary judgment in favor of appellee, Norman Murduck.

I

Elliot and Darlene Janos desired to obtain new windows for their home. They came upon a business known as Berea Pre–Hung Door. The Janoses dealt with its owner Norman Murduck, his then wife Susan, and Glenn Murduck, their son. Susan told the Janoses that the store was offering a discount on purchases made through a "truckload sale" and that the store could provide the windows the Janoses needed. After several visits to the store, the Janoses decided to purchase the windows from Berea Pre–Hung Door.

On August 21, 1993, the parties entered into a contract for the sale of the windows. Norman Murduck told the Janoses that prepayment in full was required before he would order the windows. Norman told the Janoses he would order the windows on August 23, 1993. Darlene Janos signed two checks payable to Berea Pre–Hung Door for a total amount of $3,913.30.

The Janoses never received their windows. Several weeks passed by and they contacted Susan Murduck about the delivery date. Susan represented that the windows would be delivered. Unconvinced, the Janoses drove back out to the business in the middle of October 1993. They discovered a closed store empty of merchandise. Berea Pre–Hung Door had by this time filed for bankruptcy and liquidated its inventory. Unable to get their payment refunded, the Janoses sued Berea Pre–Hung Door as well as all the Murducks.

During the litigation the Janoses dismissed their claims against Glenn and Susan Murduck. The remaining issue was whether the Janoses could hold Norman personally liable for their claims of fraud and violations of the Consumer Sales Practices Act. Norman moved for summary judgment and argued that only Berea Pre–Hung Door, as an incorporated business, could incur liability, because the Janoses had failed to assert any genuine issues of material fact necessary to pierce Berea Pre–Hung Door's corporate veil. The Janoses responded in opposition to the motion for summary judgment. The trial court agreed with Norman, finding that the Janoses "have not alleged any facts nor presented any evidence to hold Defendant Norman Murduck personally liable for the debts of Berea Pre–Hung Door, Inc." The Janoses appeal the trial court's grant of summary judgment.

## II

The Janoses assert three assignments of error: (1) the trial court erred in finding that Norman Murduck did not commit fraud; (2) the trial court improperly found that Norman Murduck could not be held personally liable for violating R.C. 1345.02 and for the outstanding debts of Berea Pre–Hung Door; and (3) the trial court improperly found that no genuine issue of material fact existed concerning Norman Murduck's commitment of an unfair consumer sales practice. Because these assignments of error relate to the trial court's grant of summary judgment, this court applies the same standard of review to them. When an appellate court reviews the trial court's grant of summary judgment, the appellate court applies the same standard as the trial court pursuant to Civ.R. 56(C): whether any genuine issues of material fact existed and whether the moving party was entitled to judgment as a matter of law. *Parenti v. Goodyear Tire & Rubber Co.* (1990), 66 Ohio App.3d 826, 829, 586 N.E.2d 1121, 1122–1123. Moreover, we address these assignments of error together because they all concern the single issue of whether the Janoses could pierce the corporate veil and hold Norman Murduck personably liable for the failure to provide the windows.

A corporation is a legal entity, separate and apart from the natural persons who formed it, and it constitutes a legal fiction designed to promote the transaction of business. *Ohio Bur. of Workers' Comp. v. Widenmeyer Elec. Co.* (1991), 72 Ohio App.3d 100, 105, 593 N.E.2d 468, 471. Shareholders, officers and directors are not liable as such for the debts of the corporation. *Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos., Inc.* (1993), 67 Ohio St.3d 274, 287, 617 N.E.2d 1075, 1085. An exception, however, developed in equity to protect creditors of a corporation from shareholders who use the corporate entity to commit criminal or fraudulent acts. *Id.* "That a corporation is a legal entity, apart from the natural persons who compose it, is a mere fiction, introduced for convenience in the transaction of its business, and of those who do business with it; but like every other fiction of the law, when urged to an intent and purpose not within its reason and policy, may be disregarded." *State ex rel. Atty. Gen. v. Std. Oil Co.* (1892), 49 Ohio St. 137, 30 N.E. 279, paragraph one of the syllabus.

A court can permit a plaintiff to hold a shareholder personally liable for the debts of a corporation only if the shareholder is indistinguishable from the corporate entity. *Belvedere, supra,* 67 Ohio St.3d at 287, 617 N.E.2d at 1085. In order for the plaintiff to pierce the veil of the corporate form and hold the shareholder personally accountable, the plaintiff must demonstrate (1) that the control over the corporation by those to be held liable was so complete that the corporation did not have a separate mind, will, or existence of its own; (2) that the control over the corporation by those to be held liable was exercised in such a

manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity; and (3) that the plaintiff suffered the injury or unjust loss as a result of such control and wrong. *Id.* at paragraph three of the syllabus. See, also, *Cent. Benefits Mut. Ins. Co. v. RIS Admrs. Agency, Inc.* (1994), 93 Ohio App.3d 397, 403–404, 638 N.E.2d 1049, 1053–1055.

We first address the Janoses' allegation that Norman Murduck engaged in an unfair consumer sales practice. R.C. 1345.02 prohibits unfair consumer sales practices and specifically lists ten unfair or deceptive acts. R.C. 1345.02(B)(1) through (10). This list is not exhaustive, however, and the Ohio Administrative Code does amplify R.C. 1345.02 by further describing prohibited unfair consumer sales practices. See *Motzer Dodge Jeep Eagle, Inc. v. Ohio Atty. Gen.* (1994), 95 Ohio App.3d 183, 190, 642 N.E.2d 20, 25. Ohio Adm.Code 109:4–3–09 provides:

"(A) It shall be a deceptive act or practice in connection with a consumer transaction for a supplier:

"(1) To advertise or promise prompt delivery unless, at the time of the advertisement, the supplier has taken reasonable action to insure proper delivery;

"(2) To accept money from a consumer for goods or services ordered by mail, telephone, or otherwise and then permit eight weeks to elapse without:

"(a) Making shipment or delivery of the goods or services ordered;

"(b) Making a full refund;

"(c) Advising the consumer of the duration of an extended delay and offering to send him a refund within two weeks if he so requests; or

"(d) Furnishing similar goods of equal or greater value as a good faith substitute."

Obviously, a corporation can incur liability for violating Ohio Adm.Code 109:4–3–09. A plaintiff can also hold an individual shareholder personally liable for using the corporation to engage in an unfair consumer sales practice. *State ex rel. Fisher v. Warren Star Theater* (1992), 84 Ohio App.3d 435, 443, 616 N.E.2d 1192, 1197–1198. In order to do so, the plaintiff must demonstrate a violation of the statute and meet the elements necessary to pierce the corporate veil pursuant to *Belvedere, supra.*

The evidence introduced by the Janoses in their response in opposition to the motion for summary judgment indicates that a genuine issue of material fact exists as to whether Murduck violated Ohio Adm.Code 109:4–3–09. Darlene and Elliot Janos each provided affidavits describing their dealings with Norman. Specifically, Darlene stated, "Norman * * * told me that the windows would be ordered on August 23, 1993" and "Based upon Norman Murduck's representation,

my husband and I decided to go forward with the purchase and gave him the full purchase price as requested." Darlene further stated that Norman never indicated the terms for refunding the deposit. The evidence also indicated that the Janoses never received delivery of the windows and that Murduck never attempted to refund the payment for the windows.

Pursuant to Ohio Adm.Code 109:4–3–09, a deceptive trade practice can occur if a supplier contracts with a buyer to provide goods and then does not fulfill his end of the bargain. In this case, a genuine issue of material fact exists as to whether Murduck engaged in a deceptive consumer sales practice because the evidence indicates Murduck did promise to provide the goods but failed to do so.

The second issue is whether the Janoses can pierce Berea Pre–Hung Door's corporate veil to hold Murduck personally liable for potentially violating Ohio Adm.Code 109:4–3–09. *Belvedere* requires the Janoses to show that Murduck so controlled the corporation that it lacked a separate existence, that Murduck used the corporate entity to commit a deceptive act, and finally, that Murduck's improper use of the corporate form resulted in injury or loss.

At his deposition, Murduck testified that Berea Pre–Hung Door was incorporated under the laws of Ohio and that he was president and the sole shareholder. Murduck also testified that his former wife, Susan, was the secretary-treasurer. In her affidavit, Susan indicated that she did sign checks but that she did not take the Janoses' deposit. Furthermore, the evidence indicated that Norman ultimately approved the contract with the Janoses because he took their check, indicated an order date, and requested payment in full.

We believe that the state of this evidence demonstrates that Murduck exercised a degree of control over Berea Pre–Hung Door to render it indistinct as a corporate entity. Murduck was the owner and top executive, approved the transaction, and had the authority to represent to the Janoses that an order for the windows would be made. Furthermore, as Murduck testified in his deposition, he founded the company and did a substantial part of the work including customizing the windows and providing installation services. Therefore, Berea Pre–Hung Door did not exist separately from Norman Murduck.

Second, a genuine issue of material fact exists as to whether Norman used the corporate entity to deceive the Janoses. The Janoses' affidavits indicate that within weeks after the contract was entered into, Berea Pre–Hung Door closed for business and liquidated its inventory. In his deposition, Norman explained that he tried to get the windows but was forced into bankruptcy approximately a week before the Janoses returned to the store in October. He further testified that he did not know the bankruptcy would occur until that week prior to the Janoses' return because of a change in operation by his main supplier. He stated

that the supplier used to allow orders to go through without full payment up front. However, the supplier now required payment in full prior to filling orders. Norman testified that he did not have cash on hand to pay his main supplier for his customers' orders.

In addition to this testimony, the Janoses' affidavits stated that Norman never represented that Berea Pre–Hung Door was a corporation. Darlene indicated that Norman told her to make the check payable to "Berea Pre–Hung Door" without a corporate designation. Elliot stated that he never received any documents containing a corporate designation. Furthermore, the contract contained only the name Berea Pre–Hung Door without any corporate designation.

This court determines that the Janoses raised a genuine issue of material fact. First, the proximity of the bankruptcy to the sale gives rise to the inference that Norman sold the windows in anticipation of the bankruptcy. Although Norman testified in his deposition that the bankruptcy occurred without warning, this testimony does not eliminate the inference. Furthermore, the record does not reveal that Norman ever represented to the Janoses that Berea Pre–Hung Door was a corporation. This raises the issue of whether he can use the corporate form as a means to escape liability after the transaction.

The last element is whether Norman's actions resulted in an injury to the Janoses. The Janoses paid full price to Norman for windows they never received. The state of the evidence indicates that reasonable minds could conclude that Norman caused the loss of their money.

In sum, the Janoses raised a genuine issue of material fact concerning Norman's personal responsibility for the debts of Berea Pre–Hung Door for violating the Consumer Sales Practices Act. Therefore, the trial court improperly granted summary judgment as to this claim.

■ The trial court, however, correctly granted summary judgment as to the claim of fraud. In order to prove fraud, a plaintiff must show (1) a representation or, where there is a duty to disclose, concealment of a fact (2) that is material to the transaction at hand, (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (4) with the intent of misleading another into relying upon it, (5) justifiable reliance upon the representation or concealment, and (6) a resulting injury proximately caused by the reliance. *Burr v. Stark Cty. Bd. of Commrs.* (1986), 23 Ohio St.3d 69, 491 N.E.2d 1101, paragraph two of the syllabus.

■ Unlike a claim brought under R.C. 1345.02 of the Consumer Sales Practices Act, a cause of action for common-law fraud contains the element of scienter. *Karst v. Goldberg* (1993), 88 Ohio App.3d 413, 420, 623 N.E.2d 1348,

1352–1353. The plaintiff must demonstrate that the defendant made a statement with the knowledge of its falsity and with the intent to mislead the plaintiff into reliance. *Id.* As the court in *Karst* explained:

"A cause of action for fraud is more difficult to prove because one of the essential elements that must be proven is the state of mind of the alleged perpetrator of the fraud. As we noted before, this difficulty was part of the reasoning behind the language of the Consumer Sales Practices Act. The legislature sought to make it easier for a consumer to recover damages from a supplier, without having to prove that the supplier possessed scienter." *Id.* Upon review of the record, this court determines that the Janoses failed to raise a genuine issue of material fact concerning scienter. Therefore, the trial court correctly granted summary judgment in favor Norman Murduck regarding the claim of fraud.

### III

Appellants' first assignment of error is overruled. Appellants' second and third assignments of error are sustained insofar as they relate to the Janoses' claim under R.C. 1345.02 of the Consumer Sales Practices Act. This cause is remanded to the trial court for proceedings consistent with this opinion.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

BAIRD, P.J., and SLABY, J., concur.