the district court had not considered it in the earlier proceeding. *See Carter-Jones Lumber,* 166 F.3d at 847-48. On remand, the decision whether to hear new evidence is within the discretion of the trial court. *Brunet v. City of Columbus,* 58 F.3d 251, 257 (6th Cir. 1995), *quoting Yashon v. Gregory,* 737 F.2d 547, 556 (6th Cir. 1984). Our "failure to specify that further evidence should be taken on remand could, at most, be construed as leaving a decision on the need to reopen the record to the sound discretion of the trial court." *Skehan v. Board of Trs.,* 590 F.2d 470, 478 (3d Cir. 1978). We find no abuse of discretion.

### 3. Conclusion

For the foregoing reasons, the decision of the district court is affirmed. Denune's motion to certify a question to the Ohio Supreme Court is denied.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0025P (6th Cir.)
File Name: 01a0025p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

CARTER-JONES LUMBER COMPANY,

　　　　*Plaintiff-Appellee,*

　　　*v.*

LTV STEEL COMPANY, et al.,

　　　　*Defendants,*

DIXIE DISTRIBUTING COMPANY, et al.,

　　　*Defendants-Appellants.*

No. 99-4241

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 92-01161—Edmund A. Sargus, Jr., District Judge.

Argued: September 22, 2000

Decided and Filed: January 23, 2001

Before: BOGGS and SUHRHEINRICH, Circuit Judges;
ALDRICH, District Judge.[*]

_____

[*] The Honorable Ann Aldrich, United States District Judge for the Northern District of Ohio, sitting by designation.

---

## COUNSEL

**ARGUED:** R. Joseph Parker, TAFT, STETTINIUS & HOLLISTER, Cincinnati, Ohio, for Appellants. Richard T. Schnars, DAILY & SCHNARS, Uniontown, Ohio, for Appellee. **ON BRIEF:** Terence L. Gallagher, Keith Anthony Kavinsky, GALLAGHER & KAVINSKY, Columbus, Ohio, for Appellants. Richard T. Schnars, John A. Daily, DAILY & SCHNARS, Uniontown, Ohio, for Appellee.

---

## OPINION

---

ALDRICH, District Judge. The underlying facts of this case are set forth in our earlier opinion, *Carter-Jones Lumber Co. v. Dixie Distrib. Co.,* 166 F.3d 840 (6th Cir. 1999). There, we affirmed the district court's judgment holding the Dixie Distributing Company ("Dixie") liable under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") for fifty percent of the response costs incurred by the plaintiff ("Carter-Jones") in the clean-up of a polluted site near Columbus, Ohio. We also affirmed the judgment holding Dixie's sole shareholder, Harry C. Denune ("Denune"), liable for thirty percent of the response costs. We reversed the district court's judgment that Denune was not jointly liable for the judgment against Dixie and remanded on the question whether Denune could be jointly liable on a veil-piercing theory. We directed the district court to consider the question in light of *United States v. Bestfoods,* 524 U.S. 51 (1998), which had been decided after the district court entered its judgment.

In *Bestfoods,* a unanimous Court held that mere control of a corporation was not enough to impose *direct* CERCLA liability on the shareholder, but that *derivative* liability could exist if the corporate veil could be pierced. *See Bestfoods,* 524 U.S. at 55. Denune argues that the district court here wrongly focused its attention on the relationship between him and the act of wrongdoing rather than on the relationship between him and Dixie. In other words, he argues that the court wrongly applied the test for direct liability to determine whether indirect liability existed.

This argument misses the point of *Bestfoods.* The Supreme Court makes it clear that courts should continue to look to the common law to determine whether to hold a corporate shareholder personally liable for the acts of the corporation in the CERCLA context. *See Bestfoods,* 524 U.S. at 63-64. The fact that Ohio common law, in this case, allows veil piercing under roughly the same conditions that CERCLA imposes direct liability is a coincidental fact about Ohio law. Denune's argument would have more force if federal common law governed the veil-piercing question, for then it would be necessary to harmonize federal common law with the statutory scheme. But as stated in note 1, *supra*, we remanded this case on the understanding that state, not federal, common law governed the veil-piercing question. *See Carter-Jones Lumber,* 166 F.3d at 847. Therefore, we reject Denune's argument that insofar as Ohio's common law imposes liability on him because of his control of the corporation, the application of Ohio common law to him violates *Bestfoods.*

### C. New Evidence on Remand

Finally, Denune argues that the district court erred by allowing Carter-Jones to introduce evidence of veil-piercing on remand when it had not done so at trial. We find no error.

*Bestfoods* was decided in June, 1998, after the first trial in the district court. We remanded for consideration of the veil-piercing question in light of *Bestfoods*, noting explicitly that

of *Belvedere*--whether Murduck used his control of the corporation to deceive Janos--rather than to the first prong, which concerns the extent of his control.

It is important to note that in *Janos* the court focused on control of the single transaction at issue in the case. It was Murduck's control and approval of the window sale that motivated the court's ruling. *Janos* is thus a stronger case for Carter-Jones's position than either *Wiencek v. Atcole Co., Inc.,* 109 Ohio App.3d 240, 244, 671 N.E.2d 1339, 1342 (1996), or *Sintel, Inc. v. Budget Sys.,* No. 74249, 1999 Ohio App. LEXIS 2774, at *23-24 (Jun. 17, 1999), two other cases cited to us for the proposition that mere control of a corporation may be sufficient to satisfy the first prong of *Belvedere.*[6]

For the foregoing reasons, the Court rejects Denune's argument that under Ohio law, mere control of a corporation, no matter how complete, is insufficient as a matter of law to trigger veil-piercing.

### B.  *Bestfoods*

Denune argues that imposition of personal liability upon him would be contrary to the holding of *Bestfoods, supra.* According to Denune, *Bestfoods* drew a distinction between direct and derivative liability that would be lost if mere control of a corporation were enough to satisfy the first prong of *Belvedere.*

---

[6]*Sintel* also contains some indication that control of the particular transaction at issue, rather than control of the corporation more generally, is important to the Ohio courts. The case concerned the purchase of unpainted binder bins by Budget Systems, a corporation owned by Liss. The court, discussing Liss's control of the corporation, noted: "For example, Liss testified that had he not given his approval, the unpainted binder bins would never have been ordered." *Id.*

On remand, the district court conducted an evidentiary hearing and ruled that under Ohio law,[1] Denune was jointly liable for the award against Dixie. This appeal followed. Dixie and Denune (hereinafter, simply "Denune") argue that the district court erred in finding that under Ohio law, Denune was jointly liable, and that the district court abused its discretion by permitting new evidence to be introduced on remand. Denune also moved to certify a question of law to the Supreme Court of Ohio. For the reasons given below, we now affirm the district court's judgment and deny Denune's motion.

---

[1]In *Bestfoods,* the Supreme Court left open the question whether state common law or federal common law should apply to veil-piercing claims in actions to enforce CERCLA's indirect liability provisions. *See Bestfoods,* 524 U.S. at 64 n. 9. In *United States v. Cordova Chem. Co.,* 113 F.3d 572 (6th Cir. 1997), the case on review in *Bestfoods,* Judge Merritt, in his concurrence, argued that the need for uniformity in this area of law suggested that federal common law should apply. *See Cordova, supra* at 584-85 (Merritt, J., concurring in part and dissenting in part). However, the parties to this case have not argued the question. At least one of our cases prior to *Bestfoods* favors the application of state common law in veil-piercing claims under CERCLA. *See Donahey v. Bogle,* 129 F.3d 838, 843 (6th Cir. 1997), *vacated on other grounds,* 524 U.S. 924 (1998), *reinstated,* 2000 U.S. App. LEXIS 16192 (Jul. 7, 2000); *see also AT&T Global Info. Solutions Co. v. Union Tank Car Co.,* 29 F.Supp.2d 857, 865 (S.D. Ohio 1998). Because our opinion remanding the case suggested that Ohio law should govern, *see Carter-Jones Lumber Co. v. Dixie Distributing Co.,* 166 F.3d at 847, we find no reason to depart from our holding in *Donahey.* In any case, we doubt that the outcome of this case would be any different if we applied federal common law, as "the rule in federal cases is founded only on the broad principle that a corporate entity may be disregarded in the interests of public convenience, fairness and equity," *Brotherhood of Locomotive Eng'rs v. Springfield Terminal Ry. Co.,* 210 F.3d 18, 26 (1st Cir. 2000) (citations and internal quotation marks omitted), and as federal common law generally "gives less respect to the corporate form than does the strict common law alter ego doctrine," *id.* at 26-27.

### 1. Facts Relevant To Veil-Piercing

Dixie was incorporated in Ohio under the name Chain Corporation of America in 1963. Denune and two others acted as incorporators. The corporation, under its new name, is still in good standing upon the records of the office of the Ohio Secretary of State. Denune is the sole shareholder.

In addition to its illegal business involving used electrical transformers containing PCBs, Dixie engaged in legitimate business. It sold motorcycle parts and purchased machinery at auction for sale. It had between twenty and twenty-five employees in Columbus and Springfield. While Denune exercised significant control over the affairs of Dixie,[2] some of Dixie's employees handled the company's payroll and petty cash accounts and the management of motorcycle parts sales.

The excerpts from Dixie's corporate notebook included in the joint appendix shows that the corporation held annual meetings of its board of directors and of its shareholders in every year from 1985 to 1999 and several special meetings in 1995.[3] Denune served as director through 1989. He did not commingle personal and corporate funds, and the corporation was sufficiently capitalized at the times Dixie engaged in the illegal actions that created its liability under CERCLA.[4] At

---

[2]He alone determined the sales price of machines, purchased machines, and initiated all orders.

[3]The joint appendix omits minutes of the meetings held in 1998, but it appears from the minutes of the meetings held in 1999 that meetings were held in 1998.

[4]Carter-Jones does raise for our consideration the suspicious sale of Dixie's inventory to Dixie Distributing Company, Inc., a Florida corporation of which Denune is also the sole shareholder. But the sale of assets took place in 1989. Carter-Jones does not appear to question that Dixie was sufficiently capitalized in 1985, when Dixie bought the PCB-laden transformers, or in 1988, by which time the EPA had discovered the

---

and no matter the other equities? Neither we nor the Ohio courts hold that such immunity exists.

Clearly, the policy underlying Ohio law on veil-piercing-- that the veil should be pierced "if an injustice would [otherwise] result," *AT&T Global Info. Solutions Co., supra* at 868– suggests that a wrongdoer should not be permitted to hide behind a legal fiction. Carter-Jones has also cited cases in which Ohio courts have implemented this policy by piercing the veil based solely on the degree of control exercised by the wrongdoer over the corporation. In *Janos v. Murduck,* 109 Ohio App.3d 583, 672 N.E.2d 1021 (1996), Janos contracted with Murduck, the owner of a construction company, to purchase windows. Janos paid nearly $4,000 to Murduck but never received the windows. Murduck's company declared bankruptcy. Janos sued Murduck and the company. The court found the first prong of *Belvedere* was satisfied because Murduck "ultimately approved the contract with the Janoses because he took their check, indicated an order date, and requested payment in full. We believe," the court continued,

> the state of this evidence demonstrates that Murduck exercised a degree of control over [the corporation] to render it indistinct as a corporate entity. Murduck was the owner, top executive, approved the transaction, and had the authority to represent to the Janoses that an order for the windows would occur.

*Id.* at 589, 672 N.E.2d at 1025. The *Janos* court pierced the veil based solely on the amount of control Murduck had over the corporation. *See* John H. Matheson & Raymond B. Eby, *The Doctrine of Piercing the Veil In An Era of Multiple Limited Liability Entities,* 75 Wash. L. Rev. 147, 179 nn. 142-149 (2000). *Janos* is distinguishable insofar as there, Murduck may not have disclosed his business's corporate status to Janos, whereas there is no evidence Denune sought to conceal Dixie's corporate status. But the distinction is irrelevant for our purposes, since it goes to the second prong

*Barents Navigation, Ltd. v. Western Overseas, Inc.,* 41 U.C.C. Rep. Serv.2d (CBC) 426. But because of the equitable nature of the veil-piercing doctrine, no list of factors can be exclusive or exhaustive. In *AT&T Global Info. Solutions Co. v. Union Tank Car Co.,* 29 F.Supp.2d 857 (S.D. Ohio 1998), a CERCLA case involving a veil-piercing analysis under Ohio law, the court held:

> As noted in *LeRoux's*, the Ohio Supreme Court endorses the notion that the corporate veil could be pierced if an injustice would result. Several Ohio appellate courts have been even more expansive and chose to disregarded [sic] the corporate entity all together [sic] where evidence of harm, injustice, or fundamental unfairness has been found.

*Id.* at 868 (citations omitted). The court also noted that "Congress enacted CERCLA with the intent of ensuring that those responsible for any damage, environmental harm, or injury from chemical poisons bear the costs of their actions. Courts applying state veil piercing law in conjunction with a CERCLA action must keep this statute's broad legislative purpose in mind." *Id.* (citations and internal quotation marks omitted).

Denune's argument, if we adopted it, would straightjacket the courts in situations where equity demands that the fiction of corporate personhood be ignored. Consider, for example, a case in which a corporation with a single shareholder kept immaculate corporate records, observed all the formalities required by corporate law, and was adequately capitalized. The shareholder never commingled funds, and never held himself out as personally liable for the corporation's debts. The corporation even does some legitimate business. Can it be that the shareholder is immunized from personal liability if he causes the corporation to commit an illegal act, no matter the degree of his control over the corporation with regard to the illegal act, no matter the harm to third parties,

the time the case was tried in the district court, Dixie had a negative net worth of between $2,000 and $2,500.

While Denune did not control every aspect of Dixie's affairs or every transaction, he clearly controlled the particular transactions that constituted the CERCLA violations for which Dixie was found liable. The invoice for the ten transformers was sent to Dixie to the attention of Denune. Denune wrote the check on Dixie's account in payment for the transformers. Denune signed an affidavit indicating he had been advised that the transformers contained PCBs. According to Woody Underwood, who was affiliated with Top Dollar Liquidators, the entity to which Denune sold the transformers, Denune was personally involved in the scheme with James Henderson to hide the transformers from the EPA. He was present for some period of time on the night Henderson and Underwood illegally transported the transformers to a property on Marion Road and later to a property on Herndon Road. Denune misled the Ohio EPA inspector, Thomas Buchan, concerning the number of transformers containing PCBs he or Dixie owned. Denune personally checked on the trailers containing the PCB-laden transformers at least twice. He sold to Tracy Westfall three of the seven transformers he had already sold to Top Dollar. According to Westfall, Denune personally arranged for the transportation of four transformers from the Herndon Road property to a property in Columbus owned by Denune and leased by Westfall. When the Ohio EPA finally found those transformers, the serial numbers had been destroyed.

---

leaking transformers.

In their briefs, Dixie and Denune have identified no person affiliated with Dixie other than Denune who had anything to do with the PCB-filled transformers.[5]

### 2. Discussion

The leading Ohio case on veil-piercing is *Belvedere Condominium Unit Owners' Ass'n v. R. E. Roark Cos., Inc.,* 67 Ohio St.3d 274, 617 N.E.2d 1075 (1993). In *Belvedere,* the Ohio Supreme Court announced a three-pronged test to determine if a shareholder is liable for the wrongdoing of the corporation of which he is an owner. The three prongs are:

1. control over the corporation by those to be held liable was so complete that the corporation had no separate mind, will, or existence of its own;

2. control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity; and

3. injury or unjust loss resulted to the plaintiff from such control and wrong.

*Belvedere,* 67 Ohio St.3d at 289, 617 N.E.2d at 1086.

In this case, there is no real argument about the second and third prongs. There is no dispute that Carter-Jones was harmed by Dixie's violation of CERCLA, or that Denune used his control over the corporation to cause it to violate the law. Denune focuses his attack on the first prong. He claims

---

[5] Denune's attorney and Chester Tracy, apparently a Dixie employee, accompanied Buchan on his inspection of the corporation's property in Springfield. But their involvement was incidental and in any case after the fact. There is no indication that they took part in any of Denune's illegal activities. Denune argues in his brief that Dixie employees were involved in the transportation of the transformers from Columbus to Springfield, but at trial, Denune was unable to identify any such employees.

the district court erred by regarding control of the illegal transaction as sufficient, rather than analyzing the question of control using the factors set out in *LeRoux's Billyle Supper Club v. Ma,* 77 Ohio App.3d 417, 602 N.E.2d 685 (1991). He also claims the result the district court reached is contrary to the rule of *Bestfoods, supra,* because it imposes veil-piercing liability on Denune in the same circumstances in which the Court in *Bestfoods* held liability under CERCLA could not be imposed. We review these questions of law *de novo. See Women's Med. Prof'l Corp. v. Voinovich,* 130 F.3d 187, 192 (6th Cir. 1997).

### A. Sufficiency of Control To Prove The First Belevedere Element

According to Denune, Ohio law requires courts to use a multi-factor test to determine whether a corporation is the alter ego of its shareholder. The factors he points to are: (1) undercapitalization; (2) failure to observe corporate formalities; (3) insolvency of the corporation at the time it incurs liability; (4) whether the shareholder held himself out as personally liable for the corporation's debts; (5) whether the shareholder diverted corporate funds to his own use; (6) failure to keep corporate records; and (7) whether "the corporation was a mere facade for the operations of the dominant shareholder." *See LeRoux's Billyle Supper Club v. Ma,* 77 Ohio App.3d 417, 422-23, 602 N.E.2d 685, 689 (1991). Here, however, he claims the district court considered only the extent of Denune's control of the illegal transaction at issue in the underlying lawsuit.

The decision in *Belvedere* came down two years after the decision in *LeRoux's Billyle.* Even after *Belvedere,* Ohio courts have continued to use a multi-factor approach when deciding whether to pierce the corporate veil. *See, e.g., Tandem Staffing v. ABC Automation Packing, Inc.,* No. 19774, 2000 Ohio App. LEXIS 2366, at *13-14 (Jun. 7, 2000); *Willoway Nurseries v. Curdes,* No. 98CA007109, 1999 Ohio App. LEXIS 4819, at *10-11 (Oct. 13, 1999);