JOURNAL ENTRY AND OPINION
Appellants, a group of eleven individual plaintiffs,[1] appeal the trial court's decision to grant defendant, America Online, Inc.'s ("AOL") motion for summary judgment. Appellants argue that there remain genuine issues of material fact surrounding their claims against AOL for breach of contract, fraud, negligent misrepresentation, and violation of the Consumer Sales Practices Act. We find each of appellants' arguments unpersuasive and, therefore, affirm the judgment of the trial court in its entirety.
In December 1996, appellants all subscribed to AOL. At the time, each of the appellants had been paying a monthly fee to AOL for access to the Internet and other services. The monthly fee was calculated at a rate of $9.95 per month for five hours of use, with an additional $2.95 for each additional hour. During December, AOL launched a new rate program which offered all existing and new subscribers a flat monthly rate of $19.95 for unlimited hourly use. In a December 1996 announcement, AOL presented the new monthly flat rate and stated that if subscribers accepted the offer "you can stay online as long as you want." The announcement also noted that "we do expect the sudden increase in use * * * to create some temporary `traffic congestion.'"
AOL posted a second notice about its new flat rate offer. In the posting, dated December 2, 1996, AOL stated, in part,
GEARING UP FOR GROWTH
 When we made the decision to switch to unlimited pricing, we knew demand would skyrocket. Rolling out the new pricing in December would create even higher usage, we realized, because December and January are normally among our busiest months. But we knew that many of you had been waiting patiently for a long time for a flat rate, and we didn't want you to have to wait any longer, so we made the decision to launch the unlimited pricing as soon as we could, which meant rolling it out this month.
 Ever since, our operations team has been working night and day to gear up for the demand, as more people join AOL and existing members use AOL more often. We've seen significant increases in usage in recent weeks, and we realize that the weeks and months ahead will bring even greater surges in usage, as members take advantage of our new unlimited pricing and spend more time online.
 Although we have been making tremendous strides in ramping up our system capacity, we do expect some bumps in the road over the next couple months, as we race to keep up with the demand. As a result, there is a good chance that you will experience problems from time to time, especially during our peak evening hours. These problems will range from busy signals when you try to connect to AOL, or delays during the connection process
(most likely, at step 3: connecting and step 6: password), or slowness when you're online and attempting to access certain features.
 We will certainly try to keep these "traffic congestion"
problems to a minimum. We also will go out of our way to inform you about what is happening with AOL, so you can get the most out of it. Just as you can hear traffic reports to get a sense of what routes to take to avoid rush hour gridlock, you can keep up with the latest on AOL's traffic patterns through a new area we've created called AOL Insider (keyword: AOL INSIDER). This new feature will be updated daily to provide you with a status report on how the system is working, as well as tips on getting the most out of AOL and an inside look on what's new on AOL.
 We expect most of the traffic congestion to occur in our "prime time," which typically runs from about 8 p.m. until Midnight. That's when we experience the greatest demand, as more of our members are typically online. So, when possible, I encourage you to sign on to AOL during other times of the day when the service is not as busy. (Emphasis added.)
Persons interested in taking advantage of the flat-rate offer were told "you must agree to AOL's Terms of Service (TOS) and Rules of the Road (ROR) which detail the terms of your AOL membership. You agree to read the TOS and the ROR[2] which you can do now by clicking the Read Now button below." It is undisputed that each of the appellants clicked the button to read the TOS and that the entire document was posted for viewing.
The TOS contains ten separate paragraphs[3] detailing all of the applicable terms of AOL's service agreement. In relevant part, the TOS provides:
 3. * * * AOL Inc. reserves the right to change its fees
and billing methods at any time effective thirty (30) days after an online posting in the billing area of the AOL Service (Keyword: Billing). If any such change is unacceptable to you, you may terminate your Membership as provided in Section 9 below. Your continued use of AOL following the effective date shall be deemed acceptance
of such change. * * *
* * *
 7. NO WARRANTY. MEMBER EXPRESSLY AGREES THAT USE OF AOL, AOL SOFTWARE, AOLS EMAIL SERVICES AND IS AT MEMBERS SOLE RISK. AOL, AOLS EMAIL SERVICES AND AOL SOFTWARE ARE PROVIDED ON AN "AS IS," "AS AVAILABLE" BASIS WITHOUT WARRANTIES OF ANY KIND, EITHER EXPRESS OR IMPLIED, UNLESS SUCH WARRANTIES ARE LEGALLY INCAPABLE OF EXCLUSION. AOL INC. .S ENTIRE LIABILITY AND YOUR EXCLUSIVE REMEDY WITH RESPECT TO USE OF AOL AND AOL SOFTWARE SHALL BE THE REPLACEMENT OF ANY DISKETTE FOUND TO BE DEFECTIVE. AOL INC.S LIABILITY TO YOU FOR BREACH OF THIS AGREEMENT IS LIMITED SOLELY TO THE AMOUNT PAID BY YOU TO ACCESS AND USE AOL. BECAUSE SOME STATES DO NOT ALLOW THE EXCLUSION OR LIMITATION OF LIABILITY FOR CONSEQUENTIAL OR INCIDENTAL DAMAGES, IN SUCH STATES AOL INC.S LIABILITY IS LIMITED TO THE EXTENT PERMITTED BY LAW. [Punctuation sic.]
* * *
 9. Termination. Either Member or AOL Inc. may terminate membership at any time. Members only right and sole remedy with respect to any dissatisfaction with any (i) TOS term, or policy or practice of AOL in operating AOL, (ii) Content available through AOL or change therein, or (iii) amount or type of fees or billing methods, or change therein, is to terminate Membership by delivering notice to AOL Inc. (Emphasis added.)
At some unspecified time after they accepted the $19.95 rate, appellants began experiencing access problems. The record, however, is devoid of specific evidence indicating who experienced what type of problems, how often the problems occurred, or how long they continued. Generally, appellants claim that the most typical problems included busy signals when trying to log-on or being knocked off the system after they had gained access.
On November 25, 1998, appellants filed a complaint against the company. As the case proceeded, the record supports the fact that after each of the appellants accepted the flat rate of $19.95, they continued to use and pay for AOL on a monthly basis. (Complaint and First Amended Complaint, paragraph 2.)
AOL moved for summary judgment and asked for the case to be dismissed because appellants received exactly what AOL agreed to provide in the TOS. The trial court agreed and granted AOL summary judgment because `[u]nlimited use' did not mean instant accessibility. The Court finds no breach of contract on the record in this case. The court dismissed appellants' remaining claims for fraud, negligent misrepresentation, and violation of the Consumer Sales Practices Act as they were unsupported by law or the evidence.
Appellants timely filed this appeal and present three assignments of error for our review. Because appellants' three assignments of error are interrelated, they will be addressed together.
ASSIGNMENT OF ERROR NO. 1:
 THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT ON APPELLANTS' BREACH OF CONTRACT CLAIMS BECAUSE GENUINE ISSUES OF MATERIAL FACT EXIST AS TO WHETHER AOL BREACHED THE TERMS OF THE CONTRACTS WITH APPELLANTS AND WHETHER THOSE CONTRACTS ARE VOID AS HAVING BEEN INDUCED BY FRAUD.
ASSIGNMENT OF ERROR NO. 2:
 THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT ON APPELLANTS' CLAIMS OF FRAUD, NEGLIGENT MISREPRESENTATION AND VIOLATION OF THE OHIO CONSUMER SALES PRACTICES ACT BECAUSE GENUINE ISSUES OF MATERIAL FACT EXIST AS TO WHETHER AOL MADE FRAUDULENT AND/OR NEGLIGENT REPRESENTATIONS REGARDING ITS "UNLIMITED USE" PROGRAM PRIOR TO THE PROGRAM'S LAUNCH.
ASSIGNMENT OF ERROR NO. 3:
 THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT, WITHOUT EVER CONSIDERING APPELLANTS' CLAIMS OF FRAUD, NEGLIGENT MISREPRESENTATION AND VIOLATION OF THE OHIO CONSUMER SALES PRACTICES ACT, BECAUSE GENUINE ISSUES OF MATERIAL FACT EXIST AS TO WHETHER AOL MADE FRAUDULENT AND/OR NEGLIGENT REPRESENTATIONS REGARDING ITS "UNLIMITED USE" PROGRAM DURING AND FOLLOWING THE PROGRAM'S LAUNCH.
Under Civ.R. 56, we must view the evidence in a light most favorable to appellants, the non-movants, and decide whether there remain genuine issues of material fact which only a trier of fact can decide. Rule 56(C) of the Ohio Rules of Civil Procedure provides that summary judgment is proper only if the trial court determines that: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence, viewed most strongly in favor of the party against whom the motion for summary judgment is made, that reasonable minds can come to but one conclusion and that conclusion is adverse to the non-moving party. Harless v. Willis Day Warehousing, Inc. (1998), 54 Ohio St.2d 64,66, 375 N.E.2d 46; Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317,327, 364 N.E.2d 267. Under the Rule and the controlling case law of this state, the moving party must support the motion with affirmative evidence in order to meet its burden of proving that no genuine issue of material fact exists for trial. Dresher v. Burt (1996), 75 Ohio St.3d 280,662 N.E.2d 264; Fyffe v. Jeno's, Inc. (1991), 59 Ohio St.3d 115,510 N.E.2d 1108.
We review the order granting summary judgment de novo. Grafton v. OhioEdison Co. (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241; McManamon v. H R Mason Contrs. (Sept. 13, 2001), Cuyahoga App. No. 79014, unreported, 2001 Ohio App. LEXIS 4068. Summary judgment should not be granted where the facts are subject to reasonable dispute. The improper grant of summary judgment "precludes a jury's consideration of a case and should, therefore, be used sparingly, only when reasonable minds can come to but one conclusion." Shaw v. Central Oil Asphalt Corp. (1981),5 Ohio App.3d 42, 44, 449 N.E.2d 3.
First, we look to determine whether there remain any genuine issues of material fact regarding appellants' claim that AOL breached the TOS contract. We find that there are no such remaining issues and that AOL was entitled to summary judgment as a matter of law.
If a contract is clear and unambiguous, then its interpretation is a matter of law and there is no issue of fact to be determined. Davis v.Loopco (1993), 66 Ohio St.3d 64, 609 N.E.2d 144; Alexander v. BuckeyePipe Line Co. (1978), 53 Ohio St.2d 241, 374 N.E.2d 146; Donelan v.Keybank (Mar. 23, 2000), Cuyahoga App. No. 75878, unreported, 2000 Ohio App. LEXIS 1184.
In the case at bar, the TOS includes key terms that appellants, not AOL, ignored. The TOS is clear, on its face, that AOL "reserve[d] the right to change its fees" and that if any such change was unacceptable to members they could terminate their membership "at any time." Moreover, the contract is unambiguous that "continued use of AOL following the effective date [of any change] shall be deemed acceptance of such change." The TOS is also straightforward that no warranty accompanies the service contract and that members accept services at their "sole risk" and on an "`AS IS,' `AS AVAILABLE' BASIS." The TOS further provides an express limitation of AOL's potential liabiltity to members where it states, in pertinent part:
 AOL INC. .S ENTIRE LIABILITY AND YOUR EXCLUSIVE REMEDY WITH RESPECT TO USE OF AOL AND AOL SOFTWARE SHALL BE THE REPLACEMENT OF ANY DISKETTE FOUND TO BE DEFECTIVE. AOL INC.S LIABILITY TO YOU FOR BREACH OF THIS AGREEMENT IS LIMITED SOLELY TO THE AMOUNT PAID BY YOU TO ACCESS AND USE AOL.
The TOS is unambiguous as to the mutual obligations between the parties. The uncontroverted evidence proves that it is appellants who failed to avail themselves of their available remedies, not that AOL denied them anything. Appellants continued to use and pay for AOL services. AOL cannot be held to have breached the TOS because, immediately upon accepting the new $19.95 monthly rate, members acknowledged that services would be provided on an availability basis.
Appellants not only signed on at their own risk but continued to use AOL's services on that same basis. Appellants admit that the gravamen of their complaint with AOL is the fact that they were inconvenienced by busy signals when trying to log-on or that they were bumped off the system once connected.
Beyond inconvenience, however, appellants fail to specify what damages they suffered. The record shows that appellants remained members even after they began experiencing problems. Appellants' conduct shows that they assented to all of the terms set forth in the TOS. As a matter of law, AOL was entitled to summary judgment because appellants received the full benefit of their bargain under the TOS. Accordingly, appellants are estopped from claiming any breach of contract by AOL or that they suffered damages. Sprungle v. Clark Equipment Co. (Dec. 26, 1074), Cuyahoga App. No. 33746, unreported, 1974 Ohio App. LEXIS 2977.
Next, appellants argue that the trial court erred in granting summary judgment on their claims for fraud, negligent misrepresentation and violation of the Consumer Sales Practices Act. In their remaining assignments of error Nos. II and III, appellants assert that AOL committed fraud, negligent misrepresentation and violated the Consumer Sales Practices Act before, during, and after they agreed to be bound by the TOS. We reject each of these claims because appellants are unable to satisfy a prima facie case under any of the liability theories advanced by them.
In order to prove an actionable claim for fraud, a plaintiff must prove: (a) a representation * * * of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation * * *, and (f) a resulting injury proximately caused by the reliance. Williams v. Aetna Fin. Co. (1998), 83 Ohio St.3d 464,700 N.E.2d 859; Mehlman v. Burns (May 25, 2000), Cuyahoga App. No. 76281, unreported, 2000 Ohio App. LEXIS 2256. Failure to establish any one of the elements precludes recovery. Mehlman, supra, at *6. See, Burrv. Stark Cty. Bd. Of Commrs. (1986), 23 Ohio St.3d 69, 491 N.E.2d 1101, paragraph two of the syllabus.
Negligent misrepresentation by a party is shown when:
 In the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, [he] supplies false information for the guidance of others in their business transactions, [he] is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.
Leal v. Holtvogt (1998), 123 Ohio App.3d 51, 702 N.E.2d 1246. Similarly, under the Consumer Sales Practices Act, appellants have to show a material misrepresentation, deceptive act, or omission. Janos v. Murdock
(1996), 109 Ohio App.3d 583, 672 N.E.2d 1021.
In the case at bar, appellants allege that AOL made two false claims before and after they signed on to the TOS; it "offered a service it knew it could not provide" and it was making continual "attempts to fix" access difficulties. Other than these two claims, appellants present only generalized comments about AOL's purported dissemination of false information.
Under Civ.R. 56, however, appellants cannot withstand summary judgment unless they set forth specific facts and evidence showing that there is a genuine issue for trial on each of their claims. Kulch v. StructuralFibers, Inc. (1997), 78 Ohio St.3d 134, 677 N.E.2d 308. Not only do appellants fail to specify, with particularity, the specific speaker(s) of any other purported misrepresentations, they fail to identify the manner in which any purported statements were conveyed to them along with failing to identify dates upon which said statements were made or where they were made. The mere generality of appellants' charges is fatal to their assertion that there remain genuine issues of material fact on their claims. We turn now to the two specific representations appellants allege were false when made by AOL.
Appellants contend that AOL's use of the phrase "unlimited use" is interchangeable with the phrase "unrestricted access" and that AOL did not provide what it offered and knew it could not do so at any time. Neither the record nor any reasonable understanding of the phrase "unlimited use", however, support such a claim. This is especially true in light of the express warnings about access availability AOL provided before and after appellants accepted the offer. AOL never said members would have instant, unfettered, and uninterrupted access to its online services. We cannot ignore the uncontroverted fact that, in response to appellees' motions for summary judgment, appellants produced nothing to challenge the evidence of their own knowledge about AOL's definition of "unlimited use", that is, as member usage increased, so would access difficulty increase. AOL never equated "unlimited use" with "unrestricted access" and appellants have offered no evidence to show otherwise.
The record shows that, during the entire time AOL offered its new pricing package, it never stated that members' access would be completely without difficulty. The evidence shows that on several occasions, especially in the two documents we find most crucial,[4] AOL warned that it anticipated increased usage and, therefore, an increase in access problems. AOL's repeated access warnings were available to members, including appellants, before and after they "clicked the button" to activate the new flat-rate offer.
Further, after accepting the flat rate offer, appellants continued to use and pay for services from AOL, thus contradicting any credible claim that AOL's attempts to address the very difficulties it had warned members about were not accomplished. Because there is no evidence indicating otherwise, we must conclude that, by their conduct, appellants continually assented to the manner in which AOL provided services to them. Appellants' actions extinguish any reasonable claim for damages by them.
We find, therefore, that appellants have not presented sufficient evidence to meet any one, let alone all, of the elements necessary to satisfy a prima facie case for fraud, negligent misrepresentation or a violation of the Consumer Sales Practices Act by AOL either before or after they accepted, continued to use and pay for services from AOL. Under Civ.R. 56, reasonable minds could not conclude differently than we do here. The trial court, therefore, did not err in granting summary judgment in favor of AOL.
The judgment of the trial court is affirmed.
It is ordered that appellee recover of appellants their costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
TIMOTHY E. McMONAGLE, ADM.J., and PATRICIA ANN BLACKMON, J., CONCUR.
[1] Originally, this case had 86 individual plaintiffs. The trial court dismissed 75 of them for failing to respond to discovery.
[2] The ROR is a document incorporated by reference in the TOS and sets forth terms and conditions not at issue in this appeal. Nonetheless, in order to remain faithful to the record herein, whenever TOS is referred to, it will mean the entire document, including the ROR.
[3] The ROR includes eight different paragraphs.
[4] The December 2, 1996 posting and the TOS.