**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

In re:                              )     BAP No.    CC-17-1154-SAKu
                                    )
LETICIA JOY ARCINIEGA,              )     Bk. No.    6:11-bk-15412-SY
                                    )
                    Debtor.         )     Adv. No.   6:11-ap-01735-SY
_____)
                                    )
LETICIA JOY ARCINIEGA,              )
                                    )
                    Appellant,      )
                                    )
v.                                  )     **MEMORANDUM**[*]
                                    )
JAMES CLARK,                        )
                                    )
                    Appellee.       )
_____)

Argued and Submitted on November 30, 2017
at Pasadena, California

Filed – December 11, 2017

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Scott Ho Yun, Bankruptcy Judge, Presiding

Appearances:     Bruce Adelstein argued for appellant; David Edward
                 Hays of Marshack Hays LLP argued for appellee.

Before: SPRAKER, ALSTON[**] and KURTZ, Bankruptcy Judges.

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8024-1.

[**] Hon. Christopher M. Alston, United States Bankruptcy Judge for the Western District of Washington, sitting by designation.

## INTRODUCTION

This is the second appeal from this adversary proceeding. In the prior appeal, we vacated the bankruptcy court's nondischargeability judgment against chapter 13[1] debtor Leticia Joy Arciniega and remanded so that the bankruptcy court could determine whether the $1,000-per-day liquidated damages clause in the parties' settlement agreement was reasonable within the meaning of Cal Civ. Code § 1671(b). We also remanded so that the bankruptcy court could apply the correct standard for awarding Arciniega's former husband James Clark his attorneys' fees.

On remand, the bankruptcy court determined that there was no evidence in the record supporting Arciniega's claim that the liquidated damages clause was unreasonable and hence Arciniega had failed to meet her burden of proof on the reasonableness issue. The bankruptcy court, in addition, identified the prevailing party attorneys' fees provision in the settlement agreement and Cal. Civ. Code § 1717 as the basis for its fee award. It then determined that most of the services Clark's counsel furnished in prosecuting the adversary proceeding were inextricably intertwined rendering it impossible to realistically or meaningfully separate the services related to contract issues from those related to fraud and nondischargeability issues.

Based on these determinations, the bankruptcy court entered an amended judgment again awarding Clark $281,000 in liquidated

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037;.

2

damages, as well as $244,586.50 in attorneys' fees.

Arciniega now appeals from the amended judgment after remand. She contends that the bankruptcy court's reasonableness finding with respect to the liquidated damages clause was clearly erroneous. We agree, and we will REVERSE that finding. In light of the procedural history of this matter, however, Clark has never been afforded a reasonable opportunity to prove up his actual damages proximately caused by Arciniega's fraud. Therefore, we will again REMAND the matter to allow the bankruptcy court to reopen the record on the proximate cause and actual damages.

As for attorneys' fees, we perceive no reversible error in the bankruptcy court's determination of the amount of the fee award. The bankruptcy court's finding that the fees were inextricably intertwined was not clearly erroneous, and Arciniega's fact-based argument on appeal challenging that finding was not raised below. That being said, the decision to remand for determination of actual damages may call into question the prevailing party determination. If on remand Clark cannot prove actual damages, it may well be that he is not the prevailing party and is not entitled to attorneys' fees under the settlement agreement and Cal. Civ. Code § 1717. Accordingly, the fee award must be VACATED because prevailing party attorneys' fees cannot be awarded under § 1717 until the final resolution of the underlying claims.

For the reasons set forth below we will REVERSE IN PART, VACATE IN PART AND REMAND the matter for a determination of proximate cause, actual damages, and prevailing party.

**FACTS**

**A.  The Couple's Two Residences And Their Post-Dissolution Dispute Over Ownership.**

During the course of their marriage, Clark and Arciniega purchased two residences.  They purchased the first one, on Arrowhead Avenue in San Bernardino, California, in 1979.  They purchased the second residence, on Verona Avenue in Hemet, California, in 1991.  To purchase the Verona property, the couple utilized home financing available as part of Clark's veterans' benefits.

Very shortly after their purchase of the Verona property, the couple separated.  After they separated, Clark resided at the Arrowhead property, and Arciniega resided at the Verona property.  In 2000, their marital dissolution became final.  Nonetheless, both remained on the legal title for each property.  In 2006, Clark deeded to Arciniega his interest in the Verona property.  And in 2007, he sued Arciniega in the San Bernardino County Superior Court to obtain sole legal title to the Arrowhead property.  Although Clark has testified that the principal purpose of the lawsuit was to force Arciniega to relinquish her interest in the Arrowhead property, we do not know much else about the state court lawsuit because the only document from it in the record is a copy of the settlement agreement resolving the lawsuit.

**B.  Settlement of the Property Dispute, Partial Performance, and Subsequent Bankruptcy Court Litigation.**

The settlement agreement resolved the principal dispute in the state court lawsuit (regarding title to the Arrowhead

4

property) as follows:

> A. Plaintiff [Clark] will pay Settling Defendant [Arciniega] the principal sum of Fifty Thousand Dollars ($50,000). The settlement draft will be made payable to defendant and her counsel of record. This payment is due on Wednesday May 13, 2009, so long as all parties have executed the settlement agreement and defendant has provided plaintiff with a properly signed and notarized quitclaim deed granting her entire interest in the [Arrowhead] Property to plaintiff. Plaintiff is required to pay defendant $1,000 for each day that he is late in delivering the settlement funds to defendant, so long as all the conditions set forth above are met.

Agreement of Compromise, Settlement, and Mutual and General Release (May 11, 2009) at Section II. A ("Subpart A").

The settlement agreement contains a separate provision dealing with the Verona property. This provision obliged Arciniega to take the steps necessary to pay off the "VA loan" encumbering the Verona property. Clark's subsequent nondischargeability claims arose from this obligation. The provision states:

> B. No later than May 13, 2010, defendant will take all necessary measures to payoff the existing VA loan and removing plaintiff's name from the loan on her property located at 890 Verona Avenue, Hemet, California. Defendant will not attempt to assume the VA loan. Defendant agrees to pay plaintiff liquidated damages at the rate of $1,000 per day for everyday that she is late complying with this provision. Plaintiff will execute all necessary documents so as to enable defendant [to] effectuate the removal of plaintiff's name from the loan on her property on 890 Verona, Hemet, CA.

Agreement of Compromise, Settlement, and Mutual and General Release (May 11, 2009) at Section II. B ("Subpart B").

The other critical provision of the settlement agreement is its attorneys' fees clause, which provides in relevant part as

5

follows:

> In the event of future actions including, but not limited to filing a motion to enforce settlement, litigation or arbitration relating to the enforcement of this Agreement, the prevailing party shall be entitled to his or her reasonable attorney's fees, expenses and costs incurred therein pursuant to California Civil Code section 1717.

Id. at Section II. 1.

Both parties duly performed their respective obligations under Subpart A, resolving the principal dispute in the state court lawsuit. But Arciniega failed to remove Clark from the VA loan secured by the Verona property, as required by Subpart B. In February 2011, she commenced her chapter 7 case. As of the petition date, the balance on the VA loan was roughly $75,000.

In May 2011, Clark filed his adversary complaint seeking relief against Arciniega under § 523(a)(2)(A) and (a)(6), and under § 727(a)(2), (a)(4) and (a)(6).[2] In relevant part, Clark alleged that Arciniega's contractual obligation to remove him from the VA loan amounted to a false promise – that she never intended to actually pay off the VA loan. Clark asserted that at the time Arciniega entered into the settlement agreement she knew it was impossible for her to payoff the VA loan – given her poor financial condition. Moreover, Clark maintained that the stated encumbrances against the Verona property significantly exceeded its value – by at least $80,000.

Arciniega responded that the settlement agreement did not require her to actually pay off the VA loan. Rather, she argued

---

[2] The bankruptcy court's judgment denied Clark any relief on his § 727 claims. Clark did not appeal this denial.

6

that it merely required her to exercise her best efforts to pay off the VA loan. Alternately, she contended that she did indeed intend to pay off the VA loan. According to Arciniega, the over-encumbrance of the Verona property, combined with overall economic conditions at the time, defeated her good faith intent and best efforts to refinance the Verona property.

The bankruptcy court held a trial on March 17, 2015. Trial consisted of the testimony and arguments of Arciniega and Clark and lasted roughly one day. Up until the time of trial, Arciniega was represented by counsel. However, at trial, Arciniega represented herself.

After trial, the bankruptcy court decided the § 523 claims in favor of Clark. The bankruptcy court determined that the settlement agreement required Arciniega to actually pay off the VA loan but that she never intended to honor this obligation. The court relied upon a series of letters between Arciniega, her lender and others. In particular, in one dated May 2, 2009 – only nine days before she entered into the settlement agreement – Arciniega lamented her poor financial condition. In it, she effectively admitted her inability to refinance the Verona property or otherwise pay off the VA loan. The bankruptcy court inferred that Arciniega had knowledge of her inability to refinance from her experience in the real estate and banking industries.

As for damages, the bankruptcy court awarded Clark the $50,000 he paid to Arciniega under the settlement agreement for the conveyance of her interests in the Arrowhead property. The court also awarded Clark $281,000 in liquidated damages. The

7

$281,000 was based on the settlement agreement's $1,000 per day liquidated damages clause, measured from May 13, 2010, the day Arciniega defaulted on her promise to pay off the VA loan, to February 18, 2011, the day Arciniega filed her chapter 7 petition. Additionally, the bankruptcy court awarded Clark $209,806.42 in attorney's fees and costs.

**C.   First Appeal from the Bankruptcy Court's Judgment.**

On appeal from the bankruptcy court's judgment, we upheld the bankruptcy court's determination that Arciniega had committed nondischargeable fraud under § 523(a)(2)(A). On the other hand, we overturned the bankruptcy court's award of $50,000 in actual damages. We held that Clark's $50,000 settlement payment was not proximately caused by Arciniega's false promise to pay off the VA loan. In so holding, we reasoned that "[n]o tie exists between the $50,000 payment Clark made to Arciniega and Arciniega's obligation to pay off the VA loan."[3]

We also overturned the bankruptcy court's liquidated damages award because the bankruptcy court did not consider whether the liquidated damages clause was reasonable.[4] As we explained, Cal.

---

[3] We based this reasoning primarily on the structure of the settlement agreement. More specifically, the $50,000 payment was part of the parties' rights and duties set forth in Subpart A, governing the parties' obligations with respect to the Arrowhead property, whereas the VA loan payoff was part of the parties' rights and duties set forth in Subpart B, governing Arciniega's obligations with respect to the Verona property. The Subpart A obligations were fully performed by both parties, whereas Arciniega did not perform her Subpart B obligations.

[4] We acknowledged Clark's argument that Arciniega did not adequately preserve the liquidated damages issue for appeal, but
(continued...)

8

Civ. Code § 1671(b) invalidates liquidated damages provisions if the damages provided for are "unreasonable under the circumstances existing at the time the contract was made." Id. We vacated and remanded on the liquidated damages issue so that "the bankruptcy court [could] evaluate whether the liquidated damages were enforceable under California law." We further stated:

> Given the standard set by the California Supreme Court [in Ridgley v. Topa Thrift & Loan Ass'n, 17 Cal. 4th 970, 977 (1998)], it seems unlikely that the $1,000/day provision was related to any anticipated actual loss Clark would suffer by remaining on the VA loan. Accordingly, upon remand, the bankruptcy court will need to review the subject provision under the given standard and determine the appropriate amount of liquidated damages, if any.

Mem Dec. (Feb. 3, 2016) at 26:25-27:4.

As for the fee award, we vacated the bankruptcy court's award of attorneys' fees because the apparent grounds for the award, the attorneys' fees clause in the settlement agreement and Cal. Civ. Code § 1717, only permitted recovery of fees for actions on a contract. At trial, the bankruptcy court did not attempt to apportion the requested fees into compensable services

---

[4](...continued)
we rejected this argument for two reasons. First, we posited that Arciniega had preserved the issue by contending during her pro se closing argument that she should not be subjected to liquidated damages. Second, even if the issue was not adequately preserved, we explained that we still could consider it because the issue was purely a legal one and Clark would not be prejudiced. According to the prior panel, there was no prejudice to Clark in considering the issue because he addressed it in his responsive appeal brief and because the liquidated damages issue was connected to Clark's burden to establish his damages, as one of the elements for obtaining relief under § 523(a)(2)(A) and (a)(6).

rendered on contract issues and noncompensable services rendered on fraud and nondischargeability issues. We also noted that the bankruptcy court potentially could determine on remand that it was impractical or impossible to apportion fees because the subject claims arose from a common core of facts or implicated issues that were inextricably intertwined. If this were the case, we explained, apportionment was unnecessary and the court could exercise its discretion to award all fees incurred.

**D.    Proceedings On Remand.**

**1.    Resolution of Liquidated Damages Issue.**

On remand, the bankruptcy court held an initial status conference at which it ordered the parties to further brief the issues remanded and to provide evidence on the reasonableness of the liquidated damages clause. At that hearing, held in October 2016, Arciniega advocated that the Panel's decision did not contemplate, or even permit, the bankruptcy court to reopen the record concerning the reasonableness of the liquidated damages clause. The bankruptcy court initially rejected that notion and directed the parties to submit declarations and exhibits on the reasonableness issue.

After briefing and the submission of written evidence, the bankruptcy court held a second post-remand status conference. At the hearing, the bankruptcy court reversed itself on the need to reopen the record to take additional evidence on the reasonableness of the liquidated damages clause and declined to reopen the record. The bankruptcy court then pointed out that the burden was on Arciniega to establish the unreasonableness of the liquidated damages clause. According to the bankruptcy

10

court, there was little or no evidence in the record relevant to the reasonableness of the liquidated damages clause.[5]  Therefore, the court concluded, Arciniega failed to meet her burden to establish the unreasonableness of the liquidated damages clause, and the clause was valid and enforceable under California law.

Arciniega argued that the liquidated damages clause itself (and the surrounding circumstances regarding the VA loan) established that the clause was unreasonable.  She contended that $1,000 per day – with no termination date – was grossly disproportionate with any potential damages the parties could have conceived of, at the time the settlement agreement was entered into, as potentially arising from breach of the VA loan payoff obligation.  The bankruptcy court gave two reasons for rejecting Arciniega's argument.  First, according to the bankruptcy court, the accumulation of liquidated damages at a rate of $1,000 per day was not in danger of continuing in perpetuity.  The bankruptcy court explained that Clark had limited his liquidated damages request in the adversary proceeding to the first 281 days of Arciniega's default, so the liquidated damages were capped at $281,000.  And second, the bankruptcy court noted that Subpart A of the settlement agreement imposed similar $1,000 per day liquidated damages on Clark if he defaulted on his obligation to pay $50,000 to Arciniega.  The bankruptcy court found that these factors negated any argument that the liquidated damages clause invoked against Arciniega was

---

[5] The court observed that at trial Arciniega had only questioned Clark about the timing as to when the liquidated damages had been inserted into the settlement agreement.

11

unreasonable, and, therefore, the provision was enforceable under California.

## 2. Resolution of Attorneys' Fees Issue.

At the end of the second post-remand hearing, both parties agreed to a process for the review and consideration of the fee issue. Clark's counsel agreed to provide its billing entries on a spread sheet that would enable Arciniega and the court to comment upon and potentially exclude from compensation individual billing entries.

Clark duly submitted counsel's billing entries in the form contemplated. He also voluntarily reduced his fee request by roughly $25,000 as a result of his review of the billing entries and his ability to determine that roughly $25,000 of the services provided did not pertain to contract-related issues. As for the remaining services, Clark maintained that he could not apportion them between contract related fees and fraud/nondischargeability related fees because they all arose from a common core of facts and also were inextricably intertwined.

Arciniega, on the other hand, did not conduct a line-item review or comment regarding specific billing entries. Instead, in her six-page opposition to the requested fees, she made two summary arguments: (1) Clark had not presented any evidence establishing that he was entitled to recover his attorneys' fees for any of his counsel's services in the litigation; and (2) the fees Clark sought to recover were grossly excessive and unreasonable.

At the third and final hearing on remand, the bankruptcy court deducted an additional $7,500 from Clark's fee request

based on its own review of the billing entries. The court otherwise agreed with Clark's position that the remaining fees arose from a common core of facts and that the contract and fraud/nondischargeability issues were inextricably intertwined. Based upon this finding, it concluded that it was impractical or impossible to further apportion the fees. The bankruptcy court also rejected Arciniega's argument that the amount of fees were unreasonable. According to the court, the large amount of fees both parties incurred were the result of the litigiousness of the parties and not the result of unreasonable billings. Ultimately, the bankruptcy court awarded Clark $244,586.50 in attorneys' fees and $11,032.02 in costs.

The bankruptcy court entered its amended judgment after remand on May 9, 2017, and Arciniega timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(I) and (J), and we have jurisdiction under 28 U.S.C. § 158.

## ISSUES

1. Did the bankruptcy court commit reversible error when, on remand, it awarded Clark $281,000 in liquidated damages?

2. Did the bankruptcy court commit reversible error when, on remand, it awarded Clark $244,586.50 in attorneys' fees?

## STANDARDS OF REVIEW

We review the bankruptcy court's liquidated damages award for an abuse of discretion. Traxler v. Multnomah Cty., 596 F.3d 1007, 1015 (9th Cir. 2010). We review the bankruptcy court's attorneys' fees award under the same standard. Dinan v. Fry

13

(In re Dinan), 448 B.R. 775, 783 (9th Cir. BAP 2011).

The bankruptcy court abused its discretion if it applied an incorrect legal standard or its factual findings were illogical, implausible or without support in the record. TrafficSchool.com, Inc. v. Edriver Inc., 653 F.3d 820, 832 (9th Cir. 2011).

**DISCUSSION**

**A.    Validity of Liquidated Damages Clause.**

In California, the validity of a liquidated damages clause is governed by Cal Civ. Code § 1671(b), which provides:

> Except as provided in subdivision (c), a provision in a contract liquidating the damages for the breach of the contract is valid unless the party seeking to invalidate the provision establishes that the provision was unreasonable under the circumstances existing at the time the contract was made.

Cal. Civ. Code § 1671 (West). The current version of the statute thus imposes on the adverse party the burden of proving that the clause was unreasonable. Prior to 1978, Cal Civ. Code § 1671 was silent on the burden of proof, but case law at the time squarely placed the burden of proof on the party seeking to invoke the liquidated damages clause. See Krechuniak v. Noorzoy, 11 Cal. App. 5th 713, 721 (2017) (citing cases). In 1978, the California legislature adopted the recommendation of California's Law Revision Commission and amended Cal Civ. Code § 1671 to "liberalize" the availability of liquidated damages in non-consumer contract cases. Ridgley v. Topa Thrift & Loan Ass'n, 17 Cal. 4th 970, 977 (1998). The legislature accomplished this liberalization, in part, by shifting the burden of proof regarding reasonableness. Id.

In addition, under the amended statute, the amount of actual

14

damages the plaintiff incurred no longer is relevant to the reasonableness of the liquidated damages clause.  This point is made clear in the Law Revision Commission commentary accompanying the amended statute:

> § 1671(b) limits the circumstances that may be taken into account in the determination of reasonableness to those in existence "at the time the contract was made." The validity of the liquidated damages provision depends upon its reasonableness at the time the contract was made and not as it appears in retrospect. Accordingly, the amount of damages actually suffered has no bearing on the validity of the liquidated damages provision.

Law Revision Commission Comments accompanying Cal. Civ. Code § 1671 (West).[6]

The Law Revision Commission further explained what circumstances typically are relevant to the reasonableness consideration:

> All the circumstances existing at the time of the making of the contract are considered, including the relationship that the damages provided in the contract bear to the range of harm that reasonably could be anticipated at the time of the making of the contract. Other relevant considerations in the determination of whether the amount of liquidated damages is so high or so low as to be unreasonable include, but are not limited to, such matters as the relative equality of the bargaining power of the parties, whether the parties were represented by lawyers at the time the contract was made, the anticipation of the parties that proof of actual damages would be costly or inconvenient, the difficulty of proving causation and foreseeability, and whether the liquidated damages provision is included in a form contract.

---

[6] "The Law Revision Commission has provided a detailed explanation of the relevant changes in section 1671.  Their 'comments are entitled to great weight in construing statutes proposed by the Commission and adopted without substantial change.'"  Krechuniak, 11 Cal. App. 5th at 721 (quoting Pac. Trust Co. TTEE v. Fidelity Fed. Sav. & Loan Ass'n, 184 Cal. App. 3d 817, 823 (1986)).

15

*Id.*

However, in interpreting Cal Civ. Code § 1671, the California Supreme court in <u>Ridgley</u> simplified the reasonableness determination under certain circumstances:

> A liquidated damages clause will generally be considered unreasonable, and hence unenforceable under section 1671(b), if it bears no reasonable relationship to the range of actual damages that the parties could have anticipated would flow from a breach. The amount set as liquidated damages must represent the result of a reasonable endeavor by the parties to estimate a fair average compensation for any loss that may be sustained. In the absence of such relationship, a contractual clause purporting to predetermine damages must be construed as a penalty. . . . In short, [a]n amount disproportionate to the anticipated damages is termed a penalty. A contractual provision imposing a penalty is ineffective, and the wronged party can collect only the actual damages sustained.

<u>Ridgley</u>, 17 Cal. 4th at 977 (citations and internal quotation marks omitted); <u>see also</u> <u>Grand Prospect Partners, L.P. v. Ross Dress for Less, Inc.</u>, 232 Cal. App. 4th 1332, 1358, <u>as modified on denial of reh'g</u> (Feb. 9, 2015) ("[T]he general rule for whether a contractual condition is an unenforceable penalty requires the comparison of (1) the value of the money or property forfeited or transferred to the party protected by the condition to (2) the range of harm or damages anticipated to be caused that party by the failure of the condition. If the forfeiture or transfer bears no reasonable relationship to the range of anticipated harm, the condition will be deemed an unenforceable penalty.").

Accordingly, when the damages provided for in a liquidated damages clause do not bear a rational and proportional relationship to the range of harm the parties conceivably could have anticipated arising from a breach at the time the parties

16

entered into the contract, the liquidated damages clause is unenforceable. See, e.g., Vitatech Int'l, Inc. v. Sporn, 2017 WL 4876175, at *6-8 (Cal. Ct. App. Sept. 29, 2017), as modified (Oct. 30, 2017); Purcell v. Schweitzer, 224 Cal. App. 4th 969, 975-76 (2014); Greentree Fin. Grp. Inc. v. Execute Sports, Inc., 163 Cal. App. 4th 495, 498-500 (2008); Harbor Island Holdings v. Kim, 107 Cal. App. 4th 790, 796, 132 Cal. Rptr. 2d 406, 409 (2003).

Here, Clark admitted that the underlying purpose of the VA loan payoff provision was to restore his entitlement to obtain a new VA loan, which he maintained only could occur if Arciniega paid off the VA loan (or otherwise managed to remove his name from the loan). Thus, the harm the parties could have anticipated arising from Arciniega's default necessarily had to be tied to Clark's inability to obtain a new VA loan. More to the point, such damages would be the difference in costs and interest between the presumably more favorable VA loan and a non-VA loan.

The imposition of $1,000 per day in damages was neither rational nor proportional to this anticipated harm. Regardless of whether Arciniega's default would have relegated Clark to obtaining a non-VA loan, or no loan at all, it is inconceivable that the parties could have or would have anticipated Clark suffering $1,000 per day in damages as a result of Arciniega's default. Nor can the obligation to pay $1,000 per day in liquidated damages be reconciled to the mortgage payments or balance owed on the Verona property. The record indicates that the monthly mortgage payment was only $1,025.48, and the balance

17

of the loan as of the settlement was roughly $75,000.

The temporal aspect of this liquidated damages clause also is problematic. An indefinite daily imposition of $1,000 in damages is neither rational nor proportional. The liquidated damages clause contains no termination date, and is not limited to payment of the loan. Thus, the clause could impose $1,000 per day in damages against Arciniega in perpetuity, leaving the damages to grow endlessly – unless and until Arciniega cured the default. This type of gross disconnect between the amount of liquidated damages and the anticipated damages is sufficient by itself to invalidate a liquidated damages clause. See Dollar Tree Stores Inc. v. Toyama Partners LLC, 875 F. Supp. 2d 1058, 1071-73 (N.D. Cal. 2012); see also Ridgley, 17 Cal. 4th at 977; Smith v. Royal Mfg. Co., 185 Cal. App. 2d 315, 324 (1960) ("Where a fixed sum is agreed upon as liquidated damages for one of several breaches of varying degree, it is to be inferred that a penalty was intended.").[7]

---

[7] We are aware that Royal Mfg. predates the major changes to Cal Civ. Code § 1671(b) enacted in 1978. Nonetheless, its observation regarding the nature of liquidated damages clauses that impose the same fixed damages for varying degrees of breach still makes perfect sense today, under Cal Civ. Code § 1671(b)'s current standard. In addition, Royal Mfg. is particularly salient to us, because the bankruptcy court reasoned that the liquidated damages clause at issue herein was reasonable, in part, because the same $1,000 per day penalty was to be imposed against both Arciniega and Clark, depending on who defaulted on their settlement agreement obligations. As suggested by Royal Mfg., the application of the same liquidated damages clause to different types of potential breaches, with significantly different types and amounts of potential damages, is evidence of the clause's unreasonableness, rather than its reasonableness, as the bankruptcy court figured.

18

The bankruptcy court rejected the argument that the liquidated damages were potentially limitless and, hence, unreasonable. The bankruptcy court reasoned that, because Clark only asked for 281 days of liquidated damages, up until Arciniega's bankruptcy filing, the liquidated damages clause was both limited and reasonable. This determination was neither logical nor supported by the record. That Clark voluntarily limited its liquidated damages request does not alter the undisputed fact that the liquidated damages clause itself did not provide for any limit or ceiling on damages.[8] Furthermore, by focusing on Clark's unilateral cap on his liquidated damages request, the bankruptcy court misapplied the legal standard under Cal. Civ. Code § 1631 because it relied on a circumstance that did not exist "at the time the contract was made." Id.

The bankruptcy court additionally opined that Arciniega presented little or no evidence and, therefore, did not satisfy her burden of proof to establish the unreasonableness of the liquidated damages clause. This determination ignored the factual and legal significance of the settlement agreement itself as evidence and the undisputed fact that the existing VA loan balance was roughly $75,000 at the time of the settlement. This

[8] That Clark voluntarily and unilaterally capped the accrual of liquidated damages as of the date of Arciniega's petition filing suggests that he believed that the commencement of a bankruptcy case somehow terminates the accrual of nondischargeable debt arising from fraud. We are not aware of any such limit on nondischargeable fraud damages. In fact, such a limit would be inconsistent with the Supreme Court's pronouncement that "§ 523(a)(2)(A) bars the discharge of **all liability** arising from fraud." Cohen v. de la Cruz, 523 U.S. 213, 222, (1998) (emphasis added).

19

evidence reasonably supports only one conclusion: that the liquidated damages clause bore no rational or proportionate relationship to Clark's conceivable damages at the time the parties entered into the settlement agreement.[9]

We acknowledge that there is a debate amongst the California appellate courts as to whether the validity/reasonableness of liquidated damages clauses is a question of fact or question of law and as to what standard of review applies. Compare Vitatech Int'l, Inc., 2017 WL 4876175, at *6, and Krechuniak, 11 Cal. App. 5th at 722–23 (question of fact), with Jade Fashion & Co. v. Harkham Indus., Inc., 229 Cal. App. 4th 635, 646 (2014) (question of law). Here, however, we do not need to predict how the California Supreme Court will resolve this debate, because the bankruptcy court's determination cannot be upheld under any potentially applicable standard of review – de novo, clearly erroneous or abuse of discretion – for the reasons set forth above. Consequently, we REVERSE the bankruptcy court's determination that the liquidated damages clause was valid, and

---

[9] As set forth in the facts section, supra, the bankruptcy court ultimately ruled on remand not to reopen the record on the reasonableness of the liquidated damages clause. Neither party has challenged this ruling on appeal. Furthermore, we see no basis to conclude that this ruling was an abuse of discretion. See generally Jones & Laughlin Steel Corp. v. Pfeifer, 462 U.S. 523, 551 (1983) ("On remand, the decision on whether to reopen the record should be left to the sound discretion of the trial court"); Carter Jones Lumber Co. v. LTV Steel Co., 237 F.3d 745, 751 (6th Cir. 2001) (same). Nor did our prior decision require a particular ruling either way on the reopening of evidence, as it was silent on the issue. Id.; see also Hall v. City of L.A., 697 F.3d 1059, 1067 (9th Cir. 2012) (stating that trial court on remand is free to decide anything not foreclosed by the mandate).

20

we hold that the clause was unenforceable under California law.

Nonetheless, our decision does not preclude Clark from all relief. Even though Clark is not entitled to liquidated damages, he still might be entitled to recover his actual damages. See Ridgley, 17 Cal. 4th 970, 977. Ordinarily, we would have expected Clark to have made his case for actual damages at the original trial, as part of his case in chief, because proximate cause and damages are elements of his nondischargeability claims. See Cossu v. Jefferson Pilot Sec. Corp. (In re Cossu), 410 F.3d 591, 596 (9th Cir. 2005); Romesh Japra M.D., F.A.C.C., Inc. v. Apte (In re Apte), 180 B.R. 223, 231 (9th Cir. BAP 1995), aff'd, 96 F.3d 1319 (9th Cir. 1996), partially abrogated on other grounds by, Kawaauhau v. Geiger, 523 U.S. 57, 61-64 (1998); see also Arciniega v. Clark (In re Arciniega), 2016 WL 455428, at *15 n.10 (Mem. Dec.) (9th Cir. BAP Feb. 3, 2016) (applying proximate cause element to § 523(a)(6) claim).

Here, however, the record demonstrates why Clark did not do so. Up until her closing argument after trial, Arciniega had done nothing to put the validity of the liquidated damages clause at issue. As a result, at no time before or during trial did Clark have any reason to suspect that he might have to prove the amount of his actual damages or that those damages were proximately caused by Arciniega's fraud. He understood his assertion of liquidated damages was undisputed.

To deprive Clark of a reasonable opportunity to prove the amount of his actual damages proximately caused by Arciniega's fraud would amount to a deprivation of his due process rights. One of the most fundamental requirements of due process is the

opportunity to be heard at a meaningful time and in a meaningful manner. Armstrong v. Manzo, 380 U.S. 545, 552, 85 S. Ct. 1187, 1191, 14 L. Ed. 2d 62 (1965). That will not happen here unless the record is reopened. Consequently, we must REMAND. On remand, the bankruptcy court must reopen the record and give the parties a reasonable opportunity to present evidence on proximate cause and damages.

**B.    Disposition of Attorneys' Fees Issue.**

Our prior decision set forth the legal standards and rules applicable to Clark's request for attorneys' fees. Those standards and rules are law of the case. See Am. Express Travel Related Servs. Co. v. Fraschilla (In re Fraschilla), 235 B.R. 449, 454 (9th Cir. BAP 1999), aff'd, 242 F.3d 381 (table) (9th Cir. 2000). We directed the bankruptcy court, to the extent practicable, to apportion the fees between compensable services rendered on contract issues and non-compensable services rendered on fraud and nondischargeability issues. We also noted that the bankruptcy court was not obliged to apportion fees to the extent it was impractical or impossible to do so because the subject claims arose from a common core of facts or implicated issues that were inextricably intertwined. Harmon v. City & Cty. of S.F., 158 Cal. App. 4th 407, 417 (2007).

More specifically, when the facts, evidence and/or legal work substantially overlap, the trial court typically does not abuse its discretion in declining to apportion fees between compensable and non-compensable units. See, e.g., Calvo Fisher & Jacob LLP v. Lujan, 234 Cal. App. 4th 608, 626 (2015); Amtower v. Photon Dynamics, Inc., 158 Cal. App. 4th 1582, 1605 (2008), as

22

modified (Feb. 15, 2008); Thompson Pac. Const., Inc. v. City of Sunnyvale, 155 Cal. App. 4th 525, 556 (2007); Mann v. Quality Old Time Serv., Inc., 139 Cal. App. 4th 328, 342 (2006); Erickson v. R.E.M. Concepts, Inc., 126 Cal. App. 4th 1073, 1085-86 (2005), as modified (Feb. 14, 2005). At bottom, the determination of whether issues on compensable and noncompensable claims are inextricably intertwined is a factual question. See Harman, 158 Cal. App. 4th at 424.

On remand, the record reflects that Clark duly submitted all of its detailed time entries and that the bankruptcy court duly reviewed these time entries and deducted fees that it determined were either unreasonable or were attributable solely to non-contract issues arising in Clark's § 727 claims for relief. In addition, Clark asserted that the contract and non-contract issues arising in his § 523 claims arose from a common core of facts and were inextricably intertwined. The bankruptcy court agreed with Clark regarding this overlap.

Arciniega, who was represented by counsel on remand, was given ample opportunity to review these same time entries and to make objections to specific time entries as being unreasonable or noncompensable or both. She only submitted a barebones objection containing three pages of argument. In the objection, she summarily asserted that Clark had not factually established that any of his fees were for services rendered on compensable contract issues. She also asserted that the amount Clark expended on legal services in this litigation was unreasonable and disproportionate with the amount at stake.

Notably, in the bankruptcy court, Arciniega did not oppose

23

Clark's contention that the fees could not be apportioned between contract and non-contract issues. She never challenged the notion that the contract and non-contract issues arose from a common core of facts and were inextricably intertwined. On appeal, she waits until page 58 of her 60-page brief to assert for the first time that the bankruptcy court could have practicably apportioned the fees by focusing on the discovery questions propounded and on the evidence presented at trial.

One overarching theme of this litigation is Arciniega's failure to timely assert arguments, claims and defenses – even when she has been represented by counsel. We have discretion to decline to consider issues and arguments that Arciniega raised for the first time on appeal. El Paso City of Tex. v. Am. W. Airlines, Inc. (In re Am. W. Airlines), 217 F.3d 1161, 1165 (9th Cir. 2000). There are certain exceptions that will permit us to review an issue for the first time on appeal. See Mano-Y & M, Ltd. v. Field (In re Mortg. Store, Inc.), 773 F.3d 990, 995 (9th Cir. 2014) (to prevent a miscarriage of justice, to preserve the integrity of the judicial process, to address a change in the law, or to consider a purely legal issue when it does not depend on the factual record or when the record already has been fully developed). Arciniega has not asserted that any of these exceptions apply here. Nor do we perceive adequate grounds to apply any of them.

Even if we were to consider Arciniega's new argument on appeal, she has failed to develop such argument. Nonetheless, we have reviewed the pleadings, exhibits and other documents included in the record in this litigation. Arciniega argued

24

vigorously at trial that: (1) the VA loan payoff provision only required her to use her best efforts to pay off the loan; and (2) her communications with various financial institutions and other entities both before and after execution of the settlement agreement demonstrated her full and complete performance of her obligations under the loan payoff provision. These hotly contested issues in this litigation concerned contract interpretation and contract performance. But, these issues also implicated Clark's fraud claims, which required evidence that she understood her contractual obligations and was aware that she would not be able to remove Clark from the VA loan. In short, there could not have been any actionable promissory fraud unless and until Clark established what Arciniega promised and that she did not honor that promise.

Moreover, virtually all of the discovery taken and evidence submitted on the § 523 claims was relevant to both contract and tort issues. Arciniega claims otherwise, but she only is able to make this claim with the benefit of hindsight. Until the bankruptcy court ruled, **after** trial, that the VA loan payoff provision was unambiguous, the discovery and presentation of extrinsic evidence regarding Arciniega's financial condition and regarding her communications with financial institutions and other entities on the subject of her loans and finances were potentially admissible contract interpretation evidence. See Pacific Gas & E. Co. v. G.W. Thomas Drayage etc. Co., 69 Cal.2d 33, 37-40 (1968) (holding that credible extrinsic evidence is admissible to determine whether a contract term is susceptible to more than one meaning and, hence, ambiguous); London Mkt.

25

*Insurers v. Sup. Ct.*, 146 Cal. App. 4th 648, 656 (2007) ("In determining if a provision is ambiguous, we consider not only the face of the contract but also any extrinsic evidence that supports a reasonable interpretation.").

As for the discovery and evidence on the § 727 claims, the bankruptcy court made deductions for non-compensable services rendered on the § 727 claims. Arciniega has done virtually nothing to establish that the bankruptcy court's deductions were insufficient. On this record, and given Arciniega's limited effort on the issue, we cannot say that the bankruptcy court's deductions for the § 727 claims were based on clearly erroneous factual findings or an erroneous view of the law. We are not obliged to search the entire record ourselves, unaided, for error. *Tevis v. Wilke, Fleury, Hoffelt, Gould & Birney, LLP (In re Tevis)*, 347 B.R. 679, 686 (9th Cir. BAP 2006).

Nor can we reverse as clearly erroneous the bankruptcy court's determination that the amount of fees requested was unreasonable. The court painstakingly considered the reasonableness of all of Clark's counsel's billing entries and made a number of deductions based on reasonableness. In addition, the bankruptcy court took into account the overall nature of the litigation and concluded that the large amount of fees incurred was not the result of unreasonable billings but rather was the result of the litigious nature of the parties. The bankruptcy court, as the trial court, is in a far better position than us to make this type of assessment, and Arciniega has not offered us any legitimate grounds to disturb that assessment. *Ellis v. Toshiba America Information Systems, Inc.*,

218 Cal.App.4th 853, 889 (2013), as modified (Aug. 14, 2013), as modified on denial of reh'g (Sept. 10, 2013).

Even so, a prevailing party attorney fee award should not be granted under Cal. Civ. Code § 1717 to a plaintiff who obtains no recovery on any of his claims. See Hsu v. Abbara, 9 Cal. 4th 863, 876 (1995) ("when a defendant **defeats recovery** by the plaintiff on the only contract claim in the action, the defendant is the party prevailing on the contract under section 1717 as a matter of law."). We have previously reversed the award of the $50,000 settlement payment relating to the Arrowhead property, and now hold that an award of liquidated damages is unenforceable.[10] Thus, there is presently no award of damages to Clark. In the absence of a damages award in his favor, Clark is not the prevailing party for attorneys' fees purposes. See id.; see also Cal Civ. Proc. Code § 1032(a)(4) (stating that a "prevailing party" includes "a defendant as against those plaintiffs who do not recover any relief against that defendant."). Put another way, the prevailing party determination only can be made on final resolution of the contract claims. Hsu, 9 Cal. 4th 863, 876; Brosio v. Deutsche Bank Nat. Trust Co. (In re Brosio), 505 B.R. 903, 910 (9th Cir. BAP 2014).

In light of our reversal of the bankruptcy court's liquidated damages award, and our remand to permit trial on

---

[10] In light of our prior reversal of the $50,000 damages award, our remand for trial on proximate cause and damages is not meant to reopen the record with respect to the $50,000 Clark paid in exchange for Arciniega's transfer of title to the Arrowhead property.

27

proximate cause and damages, we must VACATE the current attorneys' fees award. If, on remand, the bankruptcy court ultimately awards some actual damages to Clark, then the bankruptcy court may determine whether Clark or Arciniega is the prevailing party within the meaning of Cal. Civ. Code § 1717. See generally In re Tobacco Cases I, 216 Cal. App. 4th 570, 577, (2013), as modified (May 8, 2013) (explaining how determination is to be made). If Clark is the prevailing party, then the bankruptcy court may reinstate or amend its last fee award.

**CONCLUSION**

For the reasons set forth above, we REVERSE IN PART AND VACATE IN PART. Also, this matter is REMANDED for further proceedings consistent with this decision.